UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JESUS IVAN LOPEZ, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| RAMON R. VAQUERA d/b/a YUCCA | § | EP-12-CV-00427-DCG |
| CONTRACTING and SENTRILLION | § | |
| CORPORATION, | § | |
| | § | |
| **Defendants.** | § | |
| | § | |
| | § | |
| SENTRILLION CORPORATION, | § | |
| | § | |
| **Third-Party Plaintiff,** | § | |
| | § | |
| v. | § | |
| | § | |
| UNITED STATES OF AMERICA, U.S. | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, U.S. CUSTOMS AND | § | |
| BORDER PROTECTION, OFFICE OF | § | |
| THE U.S. BORDER PATROL, and the | § | |
| U.S. SECTION OF THE | § | |
| INTERNATIONAL BOUNDARY AND | § | |
| WATER COMMISSION, | § | |
| | § | |
| **Third-Party Defendants.** | § | |

## ORDER DENYING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS

Presently before this Court is Third-Party Defendants United States of America ("United States"), U.S. Department of Homeland Security, U.S. Customs and Border Protection, Office of the U.S. Border Patrol, and the U.S. Section of the International Boundary and Water Commission's Motion to Dismiss (ECF No. 2), filed on October 25, 2012. Having considered

the motion, responses and replies thereto, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

## I.  Factual and Procedural Background

The instant action arises out of a work-related accident that occurred on July 25, 2011, along the border of the United States and Mexico.  As a result of the accident, Plaintiff Jesus Ivan Lopez ("Plaintiff" or "Lopez") sustained injuries and commenced suit against Defendants Ramon R. Vaquera d/b/a YUCCA Contracting and Sentrillion Corporation ("Sentrillion") in the County Court at Law No. 6, El Paso County, Texas, on August 3, 2011.  *See Lopez v. Vaquera d/b/a YUCCA Contracting & Sentrillion Corp.*, Cause No. 2011-3088 (Co. Ct. at Law No. 6—El Paso Cnty., Tex); Notice of Removal 63, Ex. 1, at 1–4 [hereinafter Original Petition]. Thereafter, on August 26, 2012, Plaintiff filed his First Amended Petition, and on September 25, 2012, Plaintiff filed his Second Amended Petition.  Notice of Removal 52–56 [hereinafter First Amended Petition]; 38–45 [hereinafter Second Amended Petition].  Therein, Plaintiff asserts claims of negligence against Defendants under Texas law.  Second Am. Pet. 38–45.

On October 4, 2012, Defendant Sentrillion filed an Original Third Party Petition ("Third-Party Complaint") against the named Third-Party Defendants; and on or about October 11, 2012, the United States' Attorney's Offices was served with the above-referenced state court action.  In its complaint, Sentrillion asserts claims for contribution and indemnification pursuant to Chapters 32 and 33 of the Texas Civil Practice and Remedies Code and the Federal Torts Claims Act, 28 U.S.C. §§ 1346(b) and 2671 to 2680, for negligent acts attributed to employees and agencies of the United States.

On October 24, 2012, Third-Party Defendant United States removed the entire action and invoked this Court's jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).  *See* Notice of Removal 1–

-2-

3. The next day, Third-Party Defendant United States moved to dismiss the third-party complaint on the doctrine of derivative jurisdiction. Third-Party Defendant United States asserts that the claims alleged under the FTCA can only be maintained in federal court; accordingly, United States contends that this Court is without jurisdiction because the third-party complaint was not filed in federal court, rather in state court.

In determining whether dismissal is proper, the Court now turns to the applicable law to resolve (i) whether removal was in fact proper; (ii) whether the doctrine of derivative jurisdiction subject to limitation applies in the given case; and (iii) whether subject matter jurisdiction exists.

## II. Legal Standard

Federal courts are courts of limited jurisdiction, with the ability to hear only cases entrusted to them by a grant of power contained in either the Constitution or in an act of Congress. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (Article III "requires a federal court to satisfy itself of jurisdiction over the subject matter before it considers the merits of a case."); *Coury v. Prot*, 85 F.3d 244, 248–49 (5th Cir. 1996). Without jurisdiction, the court cannot proceed at all in any cause. "'Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *United States v. Tex. Tech Univ.*, 171 F.3d 279, 287–88 (5th Cir. 1999) (quoting *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 94 (1998)). As such, "[a] court must find jurisdiction . . . before determining the validity of a claim." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 623 n. 2 (5th Cir. 1999) (citing *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir. 1994)).

Federal Rules of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.

2001) (citing Fed. R. Civ. P. 12(b)(1)).  Under Rule 12(b)(1), a claim is "properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate" the claim.  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Pls.)*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal citation omitted)).

### III.  Discussion

#### i.  Removal Pursuant to 28 U.S.C. § 1442(a)(1)

Presently before this Court, neither party claims that Third-Party Defendant improperly removed the instant cause of action.[1]  Before endeavoring the application of the doctrine of derivative jurisdiction and resolving the parties' respective filings pertaining to the lack of subject matter jurisdiction, the Court preliminarily addresses the removal of the above-styled cause under 28 U.S.C. § 1442(a)(1).[2]

Referred to as the federal officer removal statute, Section 1442(a)(1) permits removal of a civil suit filed in state court when the action is against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."[3]  *See* 28 U.S.C. § 1442(a)(1).  The removal statute "is an incident of federal supremacy."

---

[1] Invocation of the federal officer removal statute constitutes the only asserted ground for removal in the instant case.  *See* Notice of Removal 1–3.

[2] Moreover, the Court also notes that none of the involved parties moved to remand the instant cause of action after Third-Party Defendant United States removed it to this Court.

[3] 28 U.S.C. 1442 reads in pertinent part:

> (a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

*Murray v. Murray*, 621 F.2d 103, 106 (5th Cir. 1980) (citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)).  Accordingly, the rationale that underlies Section 1442 avers that "federal officers [and agencies thereof the United States] are entitled to, and the interest of national supremacy requires, the protection of a federal forum in those actions commenced in state court that could arrest, restrict, impair, or interfere with the exercise of federal authority." *Id.* (citing *Willingham*, 395 U.S. at 407 (1969)).

As an initial matter, the Court notes that when the modern version of the removal statute was enacted in 1948, it only afforded federal officers removal authority.  *See* 62 Stat. 938 (1948), 28 U.S.C. § 1442(a)(1) (amended 1996 and 2011).[4]  However, in response to a Supreme Court decision, *International Primate Protection League, et al. v. Administrators of Tulane Educational Fund, et al.*, 500 U.S. 72 (1991), Congress amended the removal statute to its present-day form, e.g., the addition of "[t]he United States and any agency thereof."[5]  As a result of the current statutory language, the United States generally has authority to invoke Section

---

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

[4] 28 U.S.C. § 1442(a) (1948) provides the following text:

(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
   (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

[5] *See* H.R. Rep. 104–798, at 19–20, *and* S.R. Rep. 104–366, at 24, 1996 U.S.C.C.A.N. 4202, 4210 (1996) ("This bill legislatively reverses the Supreme Court's decision in *Int'l Primate Prot. League, et al. v. Adm'rs of Tulane Educ. Fund, et al.*, 111 S.Ct. 1700 (1991), which held that only federal officers, not federal agencies, may remove state court actions to federal court pursuant to 28 U.S.C. [§] 1442(a)(1).").

1442(a)(1). *See Fletcher v. United States*, 452 F. App'x 547, 551 (5th Cir. 2011) (*unpublished*), *cert. denied*, 132 S. Ct. 1873 (2012); *Farmer v. United States*, Civ. A. No. 12–CV–1960, 2012 WL 5463872, * 1 (E.D. La. Nov. 8, 2012); *see also, e.g., Osborn v. Haley*, 549 U.S. 225, 234 (2007); *Rodas v. Seidlin*, 656 F.3d 610, 616–17 (7th Cir. 2011) ("The provision is an exception to the "well-pleaded complaint" rule, which provides that for non-diversity cases to be removable, the complaint must establish that the case arises under federal law.") (internal citation omitted); *United States v. Schiaffino*, 275 F. App'x 115, 116 (3d Cir. 2008) (*unpublished*), *reh'g granted and op. vacated*, 285 F. App'x 931 (3d Cir. 2008), *and on reh'g*, 317 F. App'x 105 (3d Cir. 2009); *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389 (6th Cir. 2007).

Notwithstanding the amendment, the underlying principle of Section 1442(a)(1) advances the federal interests identified by Congress. *See* S.R. Rep. 104–366, at 24, 1996 U.S.C.C.A.N. 4202, 4210 (1996) ("A federal forum in such cases is important since state court actions against federal agencies and officers often involve complex federal issues and federal-state conflicts."). The current removal statute continues to maintain and promote the realization that a federal forum is crucial to actions against the United States, as well as its federal officers and agencies. *Id.* This Court observes that the modern removal statute furthers congressional intent concerning actions that involve "the exercise of Federal authority, the scope of Federal immunity and Federal-State conflicts [that ought to] be adjudicated in Federal court." H.R. Rep. 104–798, at 20, *and* S.R. Rep. 104–366, at 24. As such, Section 1442 continues to rest on a federal interest. *See Willingham*, 395 U.S. at 406; *Hexamer v. Foreness*, 981 F.2d 821, 823–24 (5th Cir. 1993)

(Because a "federal forum [is to be provided] for any litigation that might interfere with the performance of federal duties.").[6]

Moreover, the Court notes, *inter alia*, that the fact that the removing party is a third-party defendant does not defeat removal under the relevant statute. *IMFC Prof'l Servs. of Fla., Inc. v. Latin Am. Home Health, Inc.*, 676 F.2d 152, 156 (5th Cir. 1982).[7] Courts have uniformly permitted third-party defendants to remove pursuant to the special removal authority granted in Section 1442(a)(1). *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 226 (2007);[8] *Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984) (noting "that removal pursuant to 28 U.S.C. § 1442(a)(1) of a controversy involving a federal agency or officer creates ancillary federal jurisdiction over the nonfederal elements of the controversy"); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965) (citing *Allman v. Hanley,* 302 F.2d 559, 562 (5th Cir. 1962) (noting that it has been held that removal by single federal officer ends the power of the state court to issue process because the entire case is then removed)); *JAJ Ventures, L.L.C., v. Envtl. Chem. Corp.*, Civ. A. No. 2:07–CV–2718, 2009 WL 911020, at *3 (E.D. La. March 31, 2009) ("[I]t results in removal of the entire civil action, including otherwise non-removable claims asserted by and against non-governmental parties.").

---

[6] *See Rodas*, 656 F.3d at 618 (citing *State of Tenn. v. Davis*, 100 U.S. 257, 258 (1879) (Friendly, J.)) ("Section 1442 vindicates the interest of government itself; upon the principle that it embodies may depend on the possibility of the general government's preserving its own existence.") (internal citations and quotations omitted).

[7] *Id.* at n. 8 ("Our holding is not inconsistent . . . where removal by a third-party defendant government official was said to be improper because the case was considered to have been removed under [§ 1441], the separate claim removal provision, not under [§ 1442].")

[8] 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, et al, *Federal Practice & Procedure: Jurisdiction* § 3726 (4th ed. West) (current through December 2012) (maintaining that the district court properly remanded the entire case after having concluded that Powerex was not a foreign state for purposes of the Foreign Sovereign Immunities Act).

Here, the involved parties—that is, plaintiffs and defendants—do not allege that United States improperly removed the instant cause of action.[9]  In determining whether removal is proper, this Court defers to the conditions previously articulated by this circuit.

The "only prerequisite to removal of a civil action under [Section] 1442 is that it be brought against" the United States, federal officer or agency thereof.  *IMFC Prof'l Servs.*, 676 F.2d at 156.[10]  Section 1442 does not require that the "federal court have subject matter jurisdiction over the claim" against the United States and respective federal agencies in the instant case, but that the case be removed and brought against the statutorily identified parties. *Id.* ("There is no indication in [Section] 1442 that the federal court must have subject matter jurisdiction over the claim against the federal officer.").  Appropriately, the removal statute is simply a matter of process, one that brings the instant cause of action before this Court.[11]  *See Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1545 (5th Cir. 1991) (quoting *Mackay v. Uinta Dev. Co.*, 229 U.S. 173, 176 (1913)) ("'Removal proceedings are in the nature of process to bring the parties before the [district] court.'").[12]

---

[9] *Cf. Murray*, 621 F.2d at 107 (reasoning that the United States was only a stakeholder in the action since the summons in garnishment could not affect its fixed obligation to pay monthly disability benefits and, therefore, the garnishment action in state court could not "arrest, restrict, impair, or interfere with either the actions of a federal official or the operations of the federal government.").

[10] This Court notes that when the Fifth Circuit decided *IMFC Professional Services*, Congress had not yet amended Section 1442(a)(1) to include the "United States and any agency thereof." Nonetheless, the statutory text of the modern day statute does not alter the requirements necessary to invoke Section 1442, rather it only grants the "United States and any agency thereof" the special removal authority originally granted to federal officials.

[11] "[R]emoval is not a kind of jurisdiction–analogous to federal question and diversity of citizenship jurisdiction.  Rather it is a *means* of bringing cases within federal courts' original jurisdiction into those courts." *Rodas*, 656 F.3d at 623.

[12] *Compare Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 892 n. 2 (5th Cir. 1984), and *Spencer*, 737 F.2d at 436, where the suits in the respective cases were removed under Section 1441, rather than Section 1442.  This distinction is important to note because in cases removed pursuant

Case 3:12-cv-00427-DCG   Document 27   Filed 02/19/13   Page 9 of 32

Characterized as a "pure jurisdictional statute," the invocation of Section 1442 seeks to do "nothing more than grant district court jurisdiction." *Guadalupe-Blanco River Auth. v. City of Lyrtle*, 937 F.2d 184, 185 (5th Cir. 1991) (citing *Mesa v. California*, 489 U.S. 121, 136 (1989)). Although "jurisdiction" is an all-encompassing concept, perhaps an overly inclusive concept,[13] circuit precedent holds that Section 1442 confers subject matter jurisdiction.[14] *See Guadalupe-Blanco River*, 937 F.2d at 185 (noting that the case was based on entirely state law and that "Section 1442(a)(1) is the only possible basis for federal subject matter jurisdiction"); *IMFC Prof'l Servs.*, 676 F.2d at 156 ("[Section] 1442 itself grants independent jurisdictional grounds over cases . . . where a district court would not otherwise have jurisdiction.")[15].[16]

---

to Section 1441, subject matter jurisdiction, whether it be a federal question or diversity of citizenship, is required as a pre-condition for removal. Section 1441(a) provides in relevant part:

> Generally.—Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

[13] *See Henderson ex rel. Henderson v. Shinseki*,—U.S.—, 131 S.Ct. 1197, 1202 (2011) (warning that courts are too quick to affix the "jurisdiction" label, the Supreme Court endeavors to "bring some discipline to the use of this term"); *United States v. Vanness*, 85 F.3d 661, 663 n. 2 (D.C. Cir. 1996).

[14] This Circuit maintains that Section 1442 confers "subject matter jurisdiction," as opposed to removal jurisdiction. *See Guadalupe-Blanco River*, 937 F.2d at 185. Although a distinction exists between removal jurisdiction and federal subject matter jurisdiction, the Court defers to circuit precedent in its employment of the terms "subject matter jurisdiction." *Id.*

[15] This holding is limited to cases "where jurisdiction once *conferred* is lost." *IMFC Prof'l Servs.*, 676 F.2d at 157 n. 6 (emphasis added).

[16] Notwithstanding Section 1442's conferment of subject matter jurisdiction and the concern that the removal statute does not require subject matter jurisdiction to be invoked, the Court, *inter alia*, notes that the Third-Party Complaint alleges a federal cause of action against Third-Party Defendants under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 2679. Pursuant to the FTCA, the United States' federal district courts have exclusive subject matter jurisdiction over certain civil actions against the United States. 28 U.S.C. § 1346(b). Relevant to the present matter, Section 1346(b) of the FTCA authorizes that:

Respectively, in finding that the preconditions for removal under Section 1442(a)(1) have not been objected to, the Court maintains that removal was properly invoked by the third-party defendants.  In the event that removal is not proper, the Court finds that any objections to improper removal are deemed waived.  *Baris*, 932 F.2d at 1543 ("Plaintiffs have confused improper removal (i.e. lack of removal jurisdiction) with lack of original subject matter jurisdiction. The former is waivable.").  Resultantly, the Court turns to the parties' motions and respective filings in resolving whether this Court is deprived of its subject matter jurisdiction, explicitly, whether the doctrine of derivative jurisdiction divests this Court of subject matter jurisdiction.

## ii.  Doctrine of Derivative Jurisdiction

### A.  Application

The doctrine of derivative jurisdiction arises from the theory that a federal court's jurisdiction over a removed case derives from the jurisdiction of the state court where the case originated.  *See Weeks v. Fidelity & Cas. Co. of N.Y.*, 218 F.2d 503, 504 (5th Cir. 1955) (citing *Lambert Run Coal Co. v. Balt. & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922)).  Under the judicially-constructed doctrine, "[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction." *Lambert Run*, 258 U.S. at 382; *see also Arizona v. Maypenny*, 451 U.S. 232, 242 n. 17 (1981).  When applicable, said doctrine deprives district courts of

---

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for . . . personal injury or death, caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances in which the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Therefore, separate and apart from the removal statute's conferment of subject matter jurisdiction, this Court's subject matter jurisdiction over the instant case is initially warranted under the FTCA.

federal jurisdiction over removed actions if the parties "originally attempted to prosecute in state court a claim over which federal courts have exclusive jurisdiction." *Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F.2d 126, 128 (5th Cir. 1988); *see also Palmer v. City Nat'l Bank, of W. Va.*, 498 F.3d 236, 244 (4th Cir. 2007) ("The application of the doctrine often resulted in the dismissal of removed actions that were within the exclusive jurisdiction of the federal courts.").

After the Supreme Court first employed the doctrine, *Lambert Run Coal Co. v. Balt. & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922), the doctrine was subject to a great deal, arguably deserved, criticism. Described as "an archaic concept that impedes justice," when invoked, the doctrine disproportionately encumbers federal courts from entertaining cases in which only it has jurisdiction.[17] *Welsh v. Cunard Lines, Ltd.*, 595 F. Supp. 844, 846 (D. Ariz. 1984); *see also In re Dutile*, 935 F.2d 61, 63 (5th Cir. 1991) (characterizing the doctrine as a "judicial gloss on the removal statutes"), *and Azzopardi*, 742 F.2d at 892 n. 2 ("One of the great anomalies of federal jurisdiction. . ."); *see also State of N.D. v. Fredericks*, 940 F.2d 333, 336 (8th Cir. 1991) (renouncing the doctrine for its "only effect . . . was to multiply proceedings," and concluding that "[t]his kind of rigmarole is unworthy of a civilized judicial system"),[18] *and Washington v.*

---

[17] Consider the following example proposed by the Eighth Circuit in *State of N.D. v. Fredericks*, 940 F.2d 333, 336 (8th Cir. 1991):

> [S]uppose someone sued you in a state court claiming infringement of a patent. Realizing that such matters are inherent federal, [a petition for removal is filed]. The federal court, however, refuses to entertain the case.   [Irrespectively,] [f]ederal district courts have original and exclusive jurisdiction of patent-infringement case. . . The result is that a federal court refuses to entertain a case which only it has jurisdiction."

[18] The *Fredericks* Court further commented that derivative jurisdiction "owes its origin to nothing whatever in the removal statutes themselves, but rather to a formalistic conception, entirely divorced from reality, that a case originally filed in court without jurisdiction is doomed to be a nullity forever, even after transfer to a completely different forum." *Id.* at 338.

*Am. League of Prof'l Baseball Clubs*, 460 F.2d 654, 658–59 (9th Cir. 1972) (insisting that it is a "kind of legal *tour de force* that most laymen cannot understand, particularly in a case where the federal court not only has subject matter jurisdiction, but has exclusive subject matter jurisdiction").[19]

In response to judicial criticism, Congress amended the general removal statute, 28 U.S.C. § 1441, thereby abrogating the common law doctrine for removals effectuated under Section 1441 (the "1986 amendment").[20] 28 U.S.C. § 1441(e) (1986);[21] *see also* H.R. Rep. No. 423, 99th Cong., 1st Sess. 13 (citation omitted), *reprinted in* 1986 U.S.C.C.A.N. 1545, 1553 (stating that the derivative jurisdiction rule "seems to further no intelligible policy, and it involves a wasteful requirement of dismissal and refiling"). Some courts interpreted the 1986 amendment to indicate that derivative jurisdiction no longer applied to removals under any part of the United States Code, *see, e.g., Hollis v. Fla. State Univ.*, 259 F.3d 1295, 1298 (11th Cir. 2001) (holding 1986 addition of Section 1441(e) by Congress "abrogated the theory of derivative jurisdiction"); *Fredericks*, 940 F.2d at 336–38 ("[T]he policy of Congress underlying new § 1441(e) supports the complete abandonment of the derivative-jurisdiction theory, even though the words of the statute clearly do not reach this far."), whereas other courts continued to apply the doctrine in cases removed to federal court under sections other than Section 1441, *see, e.g.,*

---

[19] The doctrine also jars the spirit of the Federal Rules of Civil Procedure, which maintains that civil actions should be administered to secure the "*just*, speedy, and inexpensive determination of *every* action and proceeding." Fed. R. Civ. P. 1 (emphasis added).

[20] Judicial Improvements Act of 1985, Pub.L. 99-336 § 3, 100 Stat. 633. The amendment, first codified at 28 U.S.C. § 1441(e), eliminates derivative jurisdiction for cases removed under Section 1441. Decisions prior to 2002 refer to the current version of subsection (f) as 28 U.S.C. § 1441(e).

[21] Effective June 18, 1986, Section 1441(e) (1986) provided that upon removal,

> "[t]he Court to which civil suit is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."

*In re Elko Cnty. Grand Jury*, 109 F.3d 554, 555 (9th Cir.), *cert. denied sub nom., Elko Cnty. Grand Jury v. Siminoe*, 522 U.S. 1027 (1997), *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316 (7th Cir. 1994), *and Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989) (all circuits applying the doctrine in cases removed under Section 1442).[22]

In 2002, Congress again amended the general removal statute and made two noteworthy changes. First, Congress created a new Section 1441(e) and redesignated the prior subsection (e) as subsection (f) (the "2002 amendment"). *See* 21st Century Department of Justice Appropriations Authorization Act, Pub. L. No. 107-273, § 11020, 116 Stat. 1758, 1827 (2002). Second, Congress altered the provision's text, replacing "The court to which such civil action is removed" with the words "The court to which a civil action is removed *under this section*." *Id.* (emphasis added). Accordingly, as amended in 2002, 28 U.S.C. § 1441(f) reads:

> "The court to which a civil action is removed under this section is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action was removed did not have jurisdiction over that claim."

28 U.S.C. § 1441(f).[23]

---

[22] In *Beighley v. F.D.I.C.*, 868 F.2d 776 (5th Cir. 1989), the Fifth Circuit contemplated the application of the derivative jurisdiction doctrine to a case removed under 12 U.S.C. § 1819 (Fourth) (1982). Although the *Beighley* Court held that the derivative jurisdiction rule did not apply on the grounds that the state court had jurisdiction, the court also noted that the rule did not apply because it "is now superseded by statute. 28 U.S.C. § 1441(e) . . . is effective only for suits filed in state court after June 19, 1986, and thus is inapplicable to this case." *Id.* at 780 n. 2. Notwithstanding the non-application of the doctrine, *Beighley* did not distinguish cases that were removed pursuant to Section 1441 or non-Section 1441, e.g. Section 1819. Accordingly, the Court finds that prior to the 2002 amendments, this Court held that Section 1441(e)(1986) abrogated the doctrine pursuant to actions removed under Section 1441 as well as non-Section 1441 grounds.

[23] In endeavoring to find legislative history, the Court finds that the congressional history is at best "sparse." *See Palmer*, 498 F.3d at 245 (citing *Glorvigen v. Cirrus Design Corp.*, Civ. A. No. 06-2661, 2006 WL 3043222, at *3 (D. Minn. Oct. 24, 2006)); *see also* H.R. Conf. Rep. 107-685, *reprinted in*, 2002 U.S.C.C.A.N. 1120, 1151.

Notwithstanding the minimal, if any, existence of legislative history,[24] a plain reading of the 2002 amendment evidences much more precise language. That is, in amending the 2002 statute, Congress injected the phrase "in this section" to highlight that the abrogation of the doctrine of derivative jurisdiction is only applicable for cases removed under Section 1441—that is, the section where the phrase appears. *See Barnaby v. Quintos*, 410 F. Supp. 2d 142, 144 (S.D.N.Y. 2005) ("[R]eplacing less precise language with much more specific language, Congress left no doubt that Section 1441(f) applies only to removals under Section 1441 and not to removals under any other section. . ."). The 2002 amendment unambiguously exhibits congressional intent to narrow the doctrine's potential scope. In further evidencing our contention that Section 1441(f) only abolished removals pursuant to the general removal statute, the Court also discerns that Congress chose not to amend any other removal provision. Resultantly, this Court's inquiry begins and ends with the statutory text because the "preeminent cannon of statutory interpretation requires us to 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).

Aside from the specific text, Defendant contends that subsection (f) also applies to removals under Section 1442. While the Fifth Circuit has not directly addressed the vitality of the doctrine of derivative jurisdiction to cases removed under provisions other than Section 1441 subsequent to the 2002 amendment, circuit precedent has referenced the derivative doctrine subsequent to the adoption of the 1986 amendment. *See Baris*, 932 F.2d at 1543, 1548 n. 12 (holding that action was properly removed under the Death on the High Seas Act ("DOHSA"),

---

[24] *Palmer*, 498 F.3d at 245 (affirming that there is "no legislative history").

46 U.S.C.A. § 761 *et seq.* (1991), while concurrently noting that the doctrine of derivative

removal jurisdiction has since been abolished); *Beighley*, 868 F.2d at 780 n. 8 (mentioning in a

case removed pursuant to 12 U.S.C. § 1819 (Fourth) (1982) that the "rule is now superseded by

statute"); *Brandon v. Interfirst Corp.*, 858 F.2d 266, 269 n. 1 (5th Cir. 1988) (noting in an aside

in case removed under the ERISA preemption that "removal jurisdiction is a derivation of state

court jurisdiction" but that "[t]he observation is irrelevant at this time"); *Foval*, 841 F.2d at 128

(asserting that the doctrine of derivative jurisdiction is not implicated where the non-removing

party "welcomed" the case to a federal forum); *Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674,

680 n. 6 (5th Cir. 1987) (referring to the relevance of the doctrine but noting that it is not

necessary for the resolution of the case before it).   Apart from this circuit's handful of references

to the doctrine, this Court notes that only one case, *Baris v. Sulpicio Lines, Inc.*, was potentially

subject to the 1986 amendment.   *Id.* at 1541 (expressing that the events at issue occurred on or

after December 20, 1987); *see also Beighley*, 868 F.2d at 780 n. 8 (maintaining that the 1986

amendment "is effective only for suits filed in state court after June 19, 1986").   The *Baris* Court

did not ultimately invoke the doctrine, rather it held that the doctrine of derivative jurisdiction

was not applicable because it had been "abolished by the addition of 28 U.S.C. § 1441(e) in

1986." *Baris*, 932 F.2d at 1548.   The court's opinion in *Baris* is not on point, however, because

that case was removed under DOHSA, and the plaintiffs "fervently [averred] that the state court

had jurisdiction." *Id.* at 1548–49 (concluding that the district court had jurisdiction because the

right to consent was waived).   In the instant case, however, the Court is subject to more specific

text—the 2002 amendment limiting Section 1441(f) to cases "removed under *this* section"—and

the parties concede that the state court did not have jurisdiction over the third-party complaint.

-15-

Accordingly, the question of whether to apply this doctrine in this case requires close consideration.

Following the 2002 amendment, the Court observes that the majority of courts, that have had the occasion to rule on this issue, maintain that Section 1441(f) applies exclusively to removals under Section 1441. *See Calhoun v. Murray*, No. 09-2968, 2012 WL 6622710, at *4 (3d Cir. Dec. 20, 2012) (*unpublished*); *Bullock v. Napolitano*, 666 F.3d 281, 286 (4th Cir. 2012); *Rodas*, 656 F.3d at 619; *Palmer*, 498 F.3d at 246; *A.Q.C. ex rel. Castillo v. Bronx-Lebanon Hosp. Ctr.*, Civ. A. No. 11-2656-NRB, 2012 WL 170902, at *5 (S.D.N.Y. Jan. 20, 2012) ("District courts in this [Second] Circuit have unanimously held that the derivative jurisdiction doctrine remains applicable to FTCA claims removed pursuant to 28 U.S.C. § 1442(a)(1)).[25] Conversely, a small minority of courts acknowledges the 2002 amendment but decline to apply the doctrine. *See Glorvigen*, 2006 WL 3043222, at *3 (continuing to endorse *Fredericks*, 940 F.2d at 337 (policy underlying abrogation of derivative jurisdiction in § 1441 supports complete abandonment of derivative jurisdiction in all removed actions)).

For these reasons, the Court concludes that with respect to the continuing viability of derivative jurisdiction, Congress has articulately chosen to abrogate the common law doctrine for removals effectuated exclusively under Section 1441. Accordingly, pursuant to a reading of the

---

[25] See the following district courts where their circuits have not had the occasion to rule on the issue post-2002 amendment: (Fifth Circuit) *Olivier Plantation, LLC v. St. Bernard Parish*, 744 F. Supp. 2d 575, 587 (E.D. La. 2010); *In re Katrina Canal Breaches Consol. Litig.*, Civ. A. No. 05–4182, 2007 WL 1461036, at *2 (E.D. La. 2007); *JAJ Ventures*, 2009 WL 911020, at *3; (Sixth Circuit) *Hines v. Astrue*, Civ. A. No. 3:11–CV–409, 2012 WL 2892236, at *2 (S.D. Ohio Feb. 21, 2012); *Johnson v. Louisville Int'l Airport*, Civ. A. No. 3:11–CV–216–H, 2011 WL 2710364, at * 11 (W.D. Ky. July 12, 2011); (Ninth Circuit) *F.B.I. v. Superior Ct. of Cal.*, 507 F. Supp. 2d 1082, 1092 (N.D. Cal. 2007) (citing *In re Elko Cnty. Grand Jury*, 109 F.3d at 556); (Tenth Circuit) *Bowers v. J & M Disc. Towing, L.L.C.*, 472 F. Supp. 2d 1248, 1265 (D.N.M. 2006) (citing *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 555 (10th Cir. 2000)); (Eleventh Circuit) *Nelson v. U.S. Sec'y of Hous. & Urban Dev.*, Civ. A. No. 3:10–CV–1118– J–37–MCR, 2011 WL 5357844, at *6 (M.D. Fla. Nov. 4, 2011); (D.C. Circuit) *McKoy-Shields v. First Washington Realty, Inc.*, Civ. A. No. 11–CV–01419–RLW, 2012 WL 1076195, at *2 (D.D.C. Mar. 30, 2012).

2002 amendment, this Court holds uniformly with the majority of district courts including our

sister courts that the doctrine of derivative jurisdiction applies unless abrogated. *See Olivier*

*Plantation*, 744 F. Supp. 2d 575, 587 (E.D. La. 2010); *JAJ Ventures*, 2009 WL 911020, at *3; *In*

*re Katrina Canal Breaches Consol. Litig.*, 2007 WL 1461036, at *2; *but see Chatman v. Lawson*,

Civ. A. No. 4:98–CV–126, 1998 WL 911770, at *2 (N.D. Miss. Aug. 24, 1998), *and Erwell v.*

*Petro Processors*, 655 F.Supp. 933, 935 (E.D. La. 1987) (rejecting derivative jurisdiction

following the 1986 amendment to Section 1441 but before the 2002 amendment).

   B.  *Deprivation of "Jurisdiction" is Limited to Removal Jurisdiction*

   Although subsection (f) is limited to removals under Section 1441, the Court notes that

such a limitation does not necessarily indicate that the doctrine of jurisdiction applies in the

instant case—i.e. a case where the party disregards the doctrine upon its own removal efforts but

invokes it as a ground for dismissal.   The doctrine of derivative jurisdiction, "despite its

improvident name, is best understood as a *procedural* bar to the exercise of federal judicial

power." *Rodas*, 656 F.3d at 619 (emphasis added).  More appropriately, the doctrine, only

applicable to removed cases, is a construct to protect the integrity of the courts when invoking

removal jurisdiction and to ensure that federal courts do not acquire jurisdiction that would not

otherwise be warranted. *See Lambert Run*, 258 U.S. at 382.

   When first employed by the Supreme Court, the doctrine was predominantly concerned

with the "jurisdiction of the federal court *on removal*," emphasizing that "[i]f the state court

lacks jurisdiction of the subject-matter or of the parties, the federal court *acquires* none." *Id.*

(emphasis added).  The "acquisition of jurisdiction upon removal speaks to the so-called

'removal jurisdiction.'" *Rodas*, 656 F.3d at 622 (citing *Kirchner v. Putnam Funds Trust*, 547

U.S. 633, 641 (2006)).  Removal jurisdiction, unlike subject matter jurisdiction, is a statutory

independent basis for invoking federal jurisdiction. *Davis*, 100 U.S. at 263–64 (asserting that removal is a statutorily-provided and a derivation of a congressional grant under the "necessary and proper" clause, U.S. Const. Art. I, § 8). As it has been understood, removal jurisdiction is a potentially waivable "means" for defendants to invoke federal court jurisdiction whereas subject matter jurisdiction is not. *Baris*, 932 F.2d at 154 (understanding removal as a matter of process); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), *and Coury*, 85 F.3d at 248 (holding that parties can never consent to subject matter jurisdiction nor can the lack of subject matter jurisdiction be waived). Although described as a species of subject matter jurisdiction, removal jurisdiction does not deprive a court of subject matter jurisdiction. *Hopkins v. Dolphin Titan Int'l, Inc.*, 976 F.2d 924, 926 (5th Cir. 1992) ("Although the existence of removal jurisdiction may depend upon substantive matters, the absence of removal jurisdiction is a procedural defect."). The jurisdictional paradigm is evidenced in Supreme Court and circuit precedent whereby after a removal case is tried on the merits, the issue on appeal is not whether the case was properly removed, but whether the federal district court would have had jurisdiction of the case had it been filed in federal court. *See Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702 (1972); *see also, e.g., Mackay v. Uinta Dev. Co.*, 229 U.S. 173 (1913), *and Baggs v. Martin*, 179 U.S. 206 (1900) (exemplifying that improper removal is not dispositive since the district court could have exercised original jurisdiction). Thus, after removal is effectuated, the jurisdictional inquiry rests on whether this Court has subject matter jurisdiction.

The distinction between removal jurisdiction and subject matter jurisdiction is marked in the context of Section 1442 removals.[26] Removal jurisdiction is set forth by the requirements

_____

[26] Unlike the general removal statutes, i.e. Section 1441, and discussed Part III.i *supra*, Section 1442 does not pre-condition removal on the existence of jurisdiction. "[T]here is no indication in [Section] 1442 that the federal court must have subject matter jurisdiction over the claims." *In re Katrina Canal Breaches*, 2007 WL 1438739, at *2. In accordance with circuit precedent, Section 1442 "confers"

provided by Section 1442. Consistent with the statutory text, the instant civil case began in state court, involves the United States as a third-party defendant, and alleges action pursuant to the FTCA. Subsequent to third-party defendants' consent to removal, there was no objected-to defect in the invocation of removal jurisdiction, and none of the plaintiffs moved to remand the action. Although jurisdiction was not required for removal purposes, the Court finds that subject matter jurisdiction exists as alleged in the third-party complaint. Respectively, if some other procedural removal defect exists, such a defect may in fact be waived. *Baris*, 932 F.2d at 1544.

The distinctive significance of removal jurisdiction and subject matter jurisdiction pertains to whether the doctrine of derivative jurisdiction can be invoked to preclude the court from presiding over a case after removal jurisdiction has been consented to and effectuated. Particularly, the concern in this case is whether the doctrine may be employed as a substantive limit so as to deprive the court of subject matter jurisdiction after it has already been "acquired" upon removal, namely, where jurisdiction is not required to effectuate removal. This circuit has not had the occasion to extensively delve into the doctrine's underlying principles and applicable scope; however, it has acknowledged the doctrine while concurrently noting that the doctrine does not deprive subject matter jurisdiction in the event that it exists. *Brandon*, 858 F.2d at 269 n. (noting that removal jurisdiction is "derivative" but the "observation is irrelevant . . . since subject matter jurisdiction existed in any event."). As such, when removal jurisdiction is

---

subject matter jurisdiction. Notwithstanding the conferment of jurisdiction, federal question jurisdiction exists on the account that the Third-Party's Complaint's alleges actionable claims under the FTCA. To deprive this Court of jurisdiction based on the doctrine of derivative jurisdiction only serves to frustrate the objectives of the invoked removal statute, i.e., federal interests, particularly when subject matter jurisdiction is not a prerequisite to removal pursuant to Section 1442. Because the Court, *inter alia*, concludes that the application of the doctrine will only upset the removal process granted by Congress, the Court retains jurisdiction over the instant case.

invoked, that doctrinal concern becomes moot when it is not timely objected to "upon removal" and subject matter jurisdiction—federal question or diversity—exists.[27]

### C.   Consent to Removal Effectuates Waiver of Doctrine

The facts of this case also compel this Court to inquire whether a party waives its invocation of the derivative jurisdiction doctrine by its affirmative litigation conduct when it removes a case to federal court.  Here, Third-Party Defendant removed the instant cause of action to this Court, designedly invoking the jurisdiction of this Court.  Subsequent to removal, Third-Party Defendant United States moved to dismiss the instant action under the doctrine of derivative jurisdiction—a doctrine that could not be invoked without its consent and voluntary removal efforts.  *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (citing *Chi., R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 248 (1900) (removal requires consent)).

The key issue is whether the rationale underlying the "voluntary invocation" principle, which has been employed in other removal contexts, should be employed here.  The said principle has been consistently invoked in suits where a state-party removes an action to federal court, and consequently waives its Eleventh Amendment immunity.  *Id.* at 619; *see, e.g., Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 681, n. 3 (1999); *Emps. of Dept. of Pub. Health & Welfare of Mo. v. Dept. of Pub. Health & Welfare of Mo.*, 411 U.S. 279, 294 & n. 10 (1973) (Marshall, J., concurring in result); *Petty v. Tenn.–Mo. Bridge Comm'n*, 359 U.S. 275, 276 (1959).  Accordingly, courts have repeatedly held that "'where a [party] *voluntarily* becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act.'"  *Lapides*, 535 U.S. at 619

---

[27] This conclusion does not concern cases involving nonremovable actions, 28 U.S.C. § 1445, which statutorily prohibits the removal of certain identified actions.  Even if the cases could have been heard in federal court had the plaintiff chose a federal forum to file the complaint, such cases touch on subject matter jurisdiction.

(quoting *Gunter v. Atl. Coast Line R.R. Co.,* 200 U.S. 273, 284 (1906)); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 242–43 (5th Cir. 2005) (noting that the principle also applies to states' interventions, bankruptcy claims and voluntarily becoming a party in federal court).

 The principle is rooted in two distinct concepts—consistency and fairness. First, the principle aims to prevent inconsistent results. For instance, (i) to invoke federal jurisdiction, thereby contending that the judicial power of the United States extends to the case at hand, and (ii) to subsequently deny that the judicial power extends to the case at hand, resultantly triggers an anomalous outcome. *Lapides*, 535 U.S. at 619 (internal citations omitted). The anomaly is illustrated when a state-party *both* invokes federal jurisdiction and claims immunity from federal suit in the *same* case. *Meyers*, 410 F.3d at 243 (emphasis added). Second, the doctrine prevents a party from invoking federal jurisdiction so as to reap benefits. For example, by permitting a party to freely and contradictorily assert the above claims engenders unfair tactical advantages. *Lapides*, 535 U.S. at 621; *Meyers*, 410 F.3d at 243.

 The underlying rationale notably applies to the facts of this case. Third-Party Defendant voluntarily removed the action to this Court, invoking the jurisdiction of this Court, only to assert that such jurisdiction does not exist. Similarly to suits involving state immunity, the United States and its agency co-defendants are simultaneously soliciting and barring this Court's jurisdiction only to tactically dismiss the suit against them. The Court cannot overlook the third-party defendants' dispositive litigation act to come before this Court. The act of removal makes clear that the removing parties consented to jurisdiction; thereby, it cannot escape its voluntary act by invoking the prohibitions of the doctrine of derivative jurisdiction.

 The Court concedes that the voluntary invocation principle has not yet been extended to cases that invoke the doctrine of derivative jurisdiction; however, the Court cannot conclude that

the rationale should not apply in the instant case. *Union Pac. R.R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 341 (5th Cir. 2011) (citing *Meyers*, 410 F.3d at 243 (finding that "voluntary invocation principle" should apply "generally in all cases")). Preliminarily, in this action, removal was not necessary for dismissal could have been carried out at the state court. Nonetheless, removal was initiated and effectuated by the United States without objection.

The Court notes, *inter alia*, that subject matter jurisdiction did not exist before the filing of the third-party complaint.[28] As such, even if Sentrillion wanted to remove the original action to federal court, it lacked jurisdiction to do so. Barring the third-party complaint merely because it did not have jurisdiction at the state court, when such jurisdiction presently exists, only serves to prohibit defendants from filing third-party actions against the United States or safeguarding that no case removed under Section 1442 could ever survive in federal court. Where third-party actions are contemplated by Congress, 28 U.S.C. § 2675(a),[29] the Court finds that barring Sentrillion's complaint will only encumber the interests of justice.[30]

---

[28] Circuit precedent does not hold that exclusively jurisdictional actions cannot be maintained in federal court subsequent to removal. *See Hawkins v. Nat'l Assoc. of Sec. Dealers, Inc.*, 149 F.3d 330, 332 (5th Cir. 1998) (denying remand and retaining jurisdiction after removal pursuant to 15 U.S.C. §78aa, which provides that federal securities laws are governed "exclusively" by federal courts).

[29] Where Section 2675(a) plainly contemplated third-party actions, the Court finds that Congress clearly anticipated and foresaw for FTCA actions to surface on a third-party complaint, rather than the original complaint.

[30] The given circumstances are also analogous to cases removed under the Westfall Act, where a federal employee is sued for a wrongful or negligence act. The framework of the act empowers the Attorney General to certify that the federal employee "was acting within the scope of his office or employment at the time of the incident out of which the claims arose. . . ." 28 U.S.C. § 2679(d)(1). Upon certification, the employee is dismissed from the action, the United States is substituted as a party-defendant, and the case subsequently falls under the governance of the FTCA, i.e. it lies in the exclusive jurisdiction of federal district courts. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995). Appropriately, courts have held that the initial filing of suit in state court does not necessarily destroy jurisdiction merely because state court originally lacked jurisdiction. Rather, the great weight of authority has mandated that federal court retain jurisdiction over claims subsequent to removal. *See e.g., Osborn v. Haley*, 549 U.S. 225 (2007); *Anselmo v. Mull*, Civ. A. No. 2:12-CV-1422, 2012 WL 3233274, at *2 (E.D. Ca. Aug 6, 2012).

Notwithstanding the jurisdictional exclusivity accompanying claims under the FTCA, the instant third-party complaint is now before this Court.   Although it is conceded that the state court did not have jurisdiction over the third-party complaint, the Court finds that dismissal would be a waste of judicial time and resources because this action is now before a court that can hear the merits of the complaint. Further, the Court finds that dismissal of this action pursuant to the doctrine of derivative jurisdiction would not have preclusive effect over Sentrillion's ability to re-file its complaint in this court.

Accordingly, the doctrine of derivative jurisdiction does not apply under the given circumstances where the Court finds that Third-Party Defendant United States unequivocally submitted itself to federal jurisdiction.  To avoid inconsistent and unfair results, while noting that the initial filing in state court does not necessarily destroy jurisdiction, the Court concludes it is not deprived of jurisdiction.

### iii.  Federal Torts Claim Act ("FTCA")

In its third-party complaint, Sentrillion seeks to recover contribution and/or indemnity from the United States pursuant to the FTCA.  Specifically, Third-Party Plaintiff asserts in its complaint that federal question jurisdiction exists pursuant to 28 U.S.C. § 1346(b)[31] and 28 U.S.C. § 2675(a)[32].[33]

---

[31] Section 1346(b)(1) provides the following:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

[32] Section 2675(a) provides the following:

It is well-settled by judicial precedent that the sovereign may not be sued without its specific consent. *Lewis v. Hunt*, 492 F.3d 565, 570 (5th Cir. 2007) ("A waiver of . . . sovereign immunity must be unequivocally expressed in statutory text.") (internal citations omitted); *Houston v. U.S. Postal Serv.*, 823 F.2d 896, 898 (5th Cir. 1987), *cert. denied*, 485 U.S. 1006 (1988). The United States, as sovereign, is immune from suit except in the manner and degree sovereign immunity is waived. *Minor v. United States*, 46 F.3d 66, at \*1 (5th Cir. 1995) (*unpublished*) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976)).  As such, in the absence of an express congressional waiver of immunity, an action against the United States or its agencies does not fall within the judicial power of the federal courts. *Id.*

The FTCA, 28 U.S.C. §§ 1346(b) and 2671 to 2680, constitutes the federal government's waiver of its immunity to a variety of suits so long as specific conditions are met so as to effectuate that waiver. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994).  These

---

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

[33] Sentrillion seeks its remedies pursuant 28 U.S.C.A. § 2679(b)(1) (West 2012).  Section 2679(b)(1) provides that Sections 1346(b) and 2672 are the exclusive remedies against the United States

> "for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee."

conditions must be strictly construed and resolve all ambiguities in favor of the sovereign. *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998); *Vernell v. U.S. Postal Serv.*, 819 F.2d 108, 111 (5th Cir. 1987); *Garcia v. United States*, 776 F.2d 116, 118 (5th Cir. 1985).   Such conditions include naming the proper parties and exhausting the statutorily provided administrative requirements.   *See* 28 U.S.C. §§ 2671, 2675(a), 2679.   As such, the Court inquires as to the claims asserted by Sentrillion therein its third-party complaint and the threshold requirements to secure a claim under the FTCA.

   A.   *United States is the Exclusive Defendant*

   In addition to naming the United States as a third-party defendant, Sentrillion includes the U.S. Department of Homeland Security, U.S. Customs and Border Protection, Office of the U.S. Border Patrol, and the U.S. Section of the International Boundary and Water Commission.   In accordance with circuit precedent, FTCA claims may be brought against only the United States, and not the agencies or employees of the United States.   *See* 28 U.S.C. §§ 2671, 2679; *Esquivel-Solis v. United States*, 472 F. App'x 338, 339–40 (5th Cir. 2012) (*unpublished*); *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1998); *Vernell*, 819 F.2d at 109.   "To sue successfully under the FTCA, a plaintiff must name the United States as the sole defendant." *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir.1998).   Likewise, an FTCA claim brought against a federal agency rather than the United States shall be dismissed for want of jurisdiction.   *See Galvin*, 860 F.2d at 183 ("[A]n FTCA claim against a federal agency or employee as opposed to the United States itself must be dismissed for want of jurisdiction."); *see also Atorie Air, Inc. v. Fed. Aviation Admin. of U.S. Dep't of Transp.*, 942 F.2d 954, 957 (5th Cir. 1991) (concluding that all defendants in an FTCA action other than the United States were properly dismissed for lack of jurisdiction).

-25-

Sentrillion has improperly named agencies and/or entities other than the United States as third-party defendants in this suit. Because case law dictates that FTCA claims must be alleged exclusively against the United States, the Court dismisses all third-party defendants other that the United States for want of jurisdiction.

### B. Administrative Exhaustion

Another key condition that Congress imposed under the FTCA is the requirement that a plaintiff (or third-party plaintiff) present an administrative claim to the responsible federal agency prior to the initiation of the suit. 28 U.S.C. § 2675(a). Failure to execute the administrative requirement equates to the government's lack of consent, i.e. a defect in subject matter jurisdiction. *United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("[T]he terms of its [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit."). The failure of a claimant to exhaust his administrative remedies prior to asserting a federal action under the provisions of the FTCA deprives the court of subject matter jurisdiction over the suit. *Reynolds v. United States*, 748 F.2d 291, 292 (5th Cir. 1984).

Notwithstanding the above condition, the Court finds that the given condition is not applicable in the context of a third-party complaint, specifically, where the FTCA provides an explicit and plain exemption from the administrative exhaustion requirement to "such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint." § 2675(a). In accordance with the statutory text, the administrative requirement does not necessarily destroy this Court's subject matter jurisdiction.[34] *See In re Ingram Barge Co.*, Civ. A. No. 05-4419, 2007 WL 837181, at * 4 (E.D. La. 2007); *Hassan v. La. Dep't of Transp. & Dev.*, 923 F. Supp. 890, 893–95 (W.D. La. 1996); *see also Thompson v. Wheeler*, 898 F.2d 406, 410 (3d Cir. 1990)

---

[34] The Court notes, however, subsequent to removal, Sentrillion initiated the process concerning FTCA administrative remedies. *See* Def. Resp. to Ct. Ord., Att., at 6–8 (ECF No. 13).

("Thus, it seems to us that Congress was simply defining the types of claims that are exempted from the administrative claim requirement and distinguishing between cases initially brought in the federal courts and those initially brought in the state courts.").[35]

Here, the actions under FTCA are filed pursuant to Rule 14 of the Federal Rules of Civil Procedure.[36] That is, in the form of a third-party complaint, Sentrillion endeavors to transfer its liability asserted against him by the original plaintiff. None of the parties object or state otherwise. We find that Sentrillion's third-party complaint against the United States plainly meets the requirements of Rule 14, therefore, it qualifies for the third-party exemption and need not exhaust the administrative requirement mandated by Section 2675(a).

### C.  *Actionable Claims in Accordance with State Law*

Specific to the instant action, the FTCA holds the Government liable for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act" of federal employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1); *Ellis v. United States*, 673 F.3d 367, 372 (5th Cir. 2012); *Linkous*, 142 F.3d at 275 (maintaining that Congress has granted consent for the government to be sued under the FTCA for acts committed by any employee of the Government while acting within the scope of his office or employment).  Under

---

[35] *See also, e.g., Northridge Bank v. Cmty. Eye Care Ctr., Inc.*, 655 F.2d 832, 835 (7th Cir. 1981); *Rosario v. Am. Exp.–Isbrandtsen Lines, Inc.*, 531 F.2d 1227 (3d Cir. 1976), *cert. denied*, 429 U.S. 857 (1976); *Boada v. Autoridad de Carreteras y Transportacion*, 680 F. Supp. 2d 382, 385 (D.P.R. 2010); *Jackson v. Se. Pa. Transp. Auth.*, 727 F. Supp. 965, 966–67 (E.D. Pa. 1990) (holding that §2675(a) does not present a jurisdictional bar when third-party complaint asserted in state court was removed to federal court).

[36] Rule 14 of the Federal Rules of Civil Procedure provides in relevant part:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it . . . The plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff.

the FTCA, the Government may be liable "if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred." §1346(b); *United States v. Olson*, 546 U.S. 43, 44 (2005).

As a further requirement for an effective waiver under the FTCA, the claim against the government must be cognizable under the substantive law applicable to the case.   This waiver of sovereign immunity extends to contribution and indemnity claims that are viable under relevant state law. *See United States v. Yellow Cab Co.*, 340 U.S. 543, 548 (1951).  Under the FTCA, the right to indemnity or contribution in a tort action is normally determined under the law of the state where the negligent act or omission occurred. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) ("Indeed, we have consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State-the source of substantive liability under the FTCA."); *Carlson v. Green*, 446 U.S. 14, 23 (1980) ("[A]n action under FTCA exists only if the State in which the alleged misconduct occurred would permit a cause of action for that misconduct to go forward."); *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003) ("The FTCA authorizes civil actions for damages against the United States . . . under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred."); *Skipper v. United States,* 1 F.3d 349, 352 (5th Cir. 1993) ("Under the FTCA, the United States is liable in damages only if a private person would be liable for the same allegedly negligent act or omission under the *laws of the state* within which the act or omission occurred.") (emphasis added). Accordingly, the relevant issue here is whether Sentrillion can sustain a claim for contribution

and indemnity against a private individual in the circumstances presented pursuant to Texas law,[37] which is where the "act" occurred.

Contribution and indemnity are methods by which the burden of paying damages to a plaintiff is shifted from one defendant to another, both of whom are jointly liable to the plaintiff on the same claim. *Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. dism'd). Under Texas law, contribution and indemnity are not independent causes of action; rather, they are derivative of a plaintiff's right to recover. *Compass Bank v. Vey Fin., LLC*, Civ. A. No. 3:11–CV–00359, 2012 WL 1952290, at *2 n. 5 (W.D. Tex. May 30, 2012); *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992) (averring that a defendant's claim of contribution is derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought).

Pursuant to Texas law, three types of contribution exist—(i) common law; (ii) statutory under Chapter 32 of the Texas Civil Practice and Remedies Code; and (iii) the comparative responsibility statute under Chapter 33 of said code. *See Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 888 (Tex. App.—Dallas 2007, no pet.). In the instant case, Sentrillion asserts its contribution claim pursuant to statute, namely, Chapters 32 and Chapter 33. Preliminarily, in reviewing the third-party complaint, the Court finds that Chapter 32 does not apply in the given context because it is enforceable by "[a] person against whom a judgment is rendered has, on payment of the judgment, a right of action to recover payment from each codefendant against whom judgment is also rendered." Tex. Civ. Prac. & Rem. Code Ann. § 32.002. Because Sentrillion has not had a judgment rendered against it, it cannot seek contribution under Chapter 32. *See Paragon Gen. Contractors*, 227 S.W.3d at 888.

---

[37] Defendant Sentrillion asserts that Texas law applies because that is where the accident took place, and none of the other parties dispute that Texas law is the applicable law. Only for the purposes of the motion, the Court applies Texas law because it has no basis to refute the application of said law.

-29-

Under Chapter 33, a claim for contribution only exists among joint tortfeasors. *See* Tex.
Civ. Prac. & Rem. Code Ann. § 33 *et seq.*; *see also CBI NA-CON, Inc. v. UOP Inc.*, 961 S.W.2d
336, 339 (Tex. App.—Houston 1997, pet denied) (citing *Bonniwell v. Beech Aircraft Corp.*, 663
S.W.2d 816, 818 (Tex. 1984)).  Section 33.015(a) provides for contribution if a defendant, who
is jointly and severally liable under section 33.013, pays a percentage of the damages, for which
the defendant is jointly and severally liable greater, than his percentage of responsibility.  Such a
defendant has a right of contribution for the overpayment against each other liable defendant to
the extent the other liable defendant has not paid the percentage of damages found by the trier of
fact equal to that other defendant's percentage of responsibility.  Tex. Civ. Prac. & Rem.Code
Ann. § 33.015(a).   Accordingly, Section 33.016(a) defines "contribution defendant" as "any
defendant, counterdefendant, or *third-party defendant* from whom a party seeks contribution
with respect to any portion of damages for which that party may be liable, but from whom the
claimant seeks no relief at the time of submission." Tex. Civ. Prac. & Rem. Code Ann. §
33.016(a) (emphasis added).  Seeking contribution from a third-party defendant for tortious
activity, the Court cannot conclude that Sentrillion is barred from alleging a claim of
contribution pursuant to Chapter 33.

Likewise, under Texas law, actions seeking indemnity are in fact viable.  Two basic
categories of indemnity—common law and contractual—exist.  *See Hardy v. Gulf Oil Corp.*, 949
F.2d 826, 830 (5th Cir. 1992).  These categories of indemnity do not share equal vitality; instead,
the availability of common law indemnity, unlike contractual indemnity, is extremely limited.
*Id.* (citing *Cypress Creek Utility Serv. Co. v. Muller*, 640 S.W.2d 860, 864 (Tex. 1982), *and B &
B Auto Supply, Sand Pit & Trucking Co. v. Cent. Freight Lines, Inc.*, 603 S.W.2d 814, 816–17
(Tex. 1980)).

Applicable to Sentrillion's third-party complaint, the common law right of indemnity between joint tortfeasors has been abolished, except in cases of indemnity where a third-party's liability is either purely vicarious or involves the innocent product retailer situation. *See Aviation Office of Am., Inc. v. Alexander & Alexander of Tex., Inc.*, 751 S.W.2d 179, 180 (Tex. 1988). Vicarious liability is liability placed upon one party for the conduct of another, based solely upon the relationship between the two. *Vecellio Ins. v. Vanguard Underwriters*, 127 S.W.3d 134, 138 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Therefore, for a right of indemnity based on vicarious liability to exist, the injured party must have a cause of action against the indemnitor, that is, the one whose action caused the indemnitee to be vicariously liable. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 446 (Tex. 1989); *Vecellio*, 127 S.W.3d at 138. There is no right of indemnity against a defendant who is not liable to the plaintiff. *See Plas–Tex*, 772 S.W.2d at 446; *Vecellio*, 127 S.W.3d at 138.

Here, Sentrillion seeks recovery for indemnity based on a theory of vicarious liability. As such, the Court finds that the third-party complaint's action for indemnity is recognized under Texas law.

At the outset of this suit, and without objection from the United States, the Court finds that Sentrillion's claims of contribution and indemnity are actionable claims for recovery under Texas law. Insofar as the substantive law governing Sentrillion's claims affects subject-matter jurisdiction, Sentrillion has sufficiently established that a claim for contribution and/or indemnity could be cognizable if Texas law applies. In other words, Sentrillion has demonstrated that it could have a claim for contribution and/or indemnity under the FTCA.

Because the Court finds that the doctrine of derivative jurisdiction does not deprive this Court of jurisdiction in the given case—the only argument asserted by Third-Party Defendant in

-31-

its motion—and that subject matter jurisdiction exists as provided therein the third-party complaint, Third-Party Defendants' Motion to Dismiss is denied.

## IV.   Conclusion

Accordingly, for the preceding reasons the Court enters the following order,

**IT IS HEREBY ORDERED THAT** Third-Party Defendants United States of America ("United States"), U.S. Department of Homeland Security, U.S. Customs and Border Protection, Office of the U.S. Border Patrol, and the U.S. Section of the International Boundary and Water Commission's Motion to Dismiss (ECF No. 2) is **DENIED**.

**IT IS FURTHER ORDERED THAT** Third-Party Defendants U.S. Department of Homeland Security, U.S. Customs and Border Protection, Office of the U.S. Border Patrol, and the U.S. Section of the International Boundary and Water Commission are **DISMISSED** for want of jurisdiction.

**So ORDERED and SIGNED this 19th day of February, 2013.**

**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**